# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **GREGORY M. FRIEDLANDER** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No.:_____** |
| **EXPERIAN INFORMATION SOLUTIONS,** | ) | |
| **INC., TRANS UNION, LLC., EQUIFAX** | | |
| **INFORMATION SERVICES, LLC, and A, B, C,)** | | |
| **are those individuals** | | |
| or entities who caused or contributed to the | ) | |
| damages suffered by the Plaintiff and whose | | |
| identities are presently unknown but will be | ) | |
| added by amendment when ascertained. | | |
| | ) | |
| **Defendants.** | | |
| | ) | |

## COMPLAINT

### COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE AND OTHER RELIEF

#### (JURY DEMAND ENDORSED HEREIN)

Now comes Plaintiff, by his attorneys, and for his *Complaint* against Defendants, Equifax

Information Services, LLC, Experian Information Solutions, and TransUnion, LLC as follows:

### JURISDICTION AND VENUE

1) This is an action by a consumer seeking actual, statutory and punitive damages, attorneys

fees and costs for the defendants' violation of the Fair Credit Reporting Act (hereinafter

FCRA).  It also arises under Sections 5(a), 5(m)( 1 )(A), I3(b), and 16(a) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(I)(A), 53(b), and 56(a); the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. §§ I68I~168Ix; and the Fair Debt Collection

Practices Act ("FDCP A"), 15 u. S.C. §§ 1692-1692p, also sometimes referred to as the Fair

Debt Collection Act ("FDCA") to obtain monetary civil penalties, a permanent injunction,

restitution, disgorgement, and other equitable relief for Defendant's violations of Section 5 of

the FTC Act, the FCRA, and the FDCP A.

2) This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1337(a),1345, and

1355, and under 15 U.S.C. §§ 45(a)(I), 45(m)(1)(A), 53(b), 15 USC §1681s, and 15 USC

§1692.

3) Venue is proper in the United States District Court for the Southern District of Alabama

under 28 U.S.C. §§ 1391(b)-(c), 1395(a), and 15 U.S.C. § 53(b).

4) This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. §1681p.

Venue in this judicial district is proper because Plaintiff resides in this judicial district and

many of the facts relevant to this Complaint occurred in this judicial district.

**PARTIES**

5) The following paragraphs apply to all of the counts set forth below.

6) Plaintiff, ("Plaintiff" or Friedlander), is an adult individual presently residing in Mobile,

Alabama. Plaintiff is a "consumer" as defined in Section 1681a(c) of the FCRA.

7) Defendant, Equifax Information Services, LLC ("Equifax"), is a Georgia limited liability

company doing business throughout the country and in the State of Alabama. Equifax is a

"consumer reporting agency" as defined in Section 1681a(f) the FCRA. Equifax is one of the

largest CRAs in the world.

8)  Defendant Experian Information Solutions, Inc. ("Experian"), is a California company doing business throughout the country and in the State of Alabama. Experian is a "consumer reporting agency" as defined in Section 1681a(f) the FCRA. Experian is one of the largest CRAs in the world.

9)  Defendant, Trans Union, LLC ("Transunion"), is an Illinois company doing business throughout the country and in the State of Alabama. Transunion is a "consumer reporting agency" as defined in Section 1681a(f) the FCRA. Transunion is one of the largest CRAs in the world.

10) A, B, C, are those individuals or entities who caused or contributed to the damages suffered by the Plaintiff, who are liable under the same facts and whose identities are presently unknown but will be added by amendment when ascertained.

11) The three named defendants are regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

12) A "consumer reporting agency" (CRA) is defined by the FCRA as follows:

Any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

**INTRODUCTION**

13) The following paragraphs apply to all of the counts set forth below.

14) Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

15) The preservation of each consumer's good name is also at the heart of the FCRA's purposes. The failure to investigate allows a creditor to ruin a consumer reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain money through borrowing and damages associated with misreported credit. The failure of the Credit Reporting agencies to follow the procedures for investigation, removal, maintaining removal, provide notice and otherwise follow the FCRA in regard to inaccurate reporting or unconfirmed reports has the same potential for harm.

16) To further the primary goal of greater accuracy, the FCRA has also required CRAs, as well as "furnishers" of credit information to the CRAs, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

17) In this case, the defendants received proof that certain debts alleged to be owed by plaintiff were invalid. (1) The defendants failed to obtain any contrary information. (2) They were requested to give whatever information they were relying on contrary to the clear proof the debt was satisfied and refused to give anything because there was nothing to give. (3) In one case, a court agreed that the debt was presumed settled and this order was delivered to the credit reporting agencies and they ignored that order and continued to report the debts due

that were no longer owed.  The effect was to lower the plaintiff's credit score over 100 point lower than it should have been.

18)  Plaintiff relied extensively on his credit rating. As such, Plaintiff believes and understands that his credit record with all of his creditors had to be monitored and repaired if incorrect.

19)  One of the two misreported debts is the Alyeska debt.  On or about August 9, 2010 FRIEDLANDER made an offer to settle a claim on Alyeska Condominium owed to Wachovia.  Wachovia accepted this tender by negotiation of the check on or before August 23, 2010.

20) FRIEDLANDER settled with all other banks where he had disputes in 2011 (Wachovia in 2010, other bank loan guarantees in 2010 and 2011) and by August of 2012 an SBA settlement, the SBA debt, was finalized and paid on October 8, 2012.  This meant that FRIEDLANDER's credit should have reflected that he was in good standing with his creditors.

21)  On or about May 21, 2012 Gregory Friedlander confirmed that the defendants were misreporting the status of the Alyeska loan despite several letters telling Wells Fargo to report it correctly and Friedlander told this to bank's representatives.  This came up as FRIEDLANDER became aware that his credit report, while wildly inaccurate, could be otherwise repaired.

22) On June 26, 2012 FRIEDLANDER followed up writing the first of several letters to the credit reporting agency defendants requesting a reinvestigation, asking for any information related to the claims and asking that misreporting be corrected.

23) The plaintiff followed up the June 26, 2012 letter with a series of letters demanding that the credit reports be reinvestigated and attempting a resolution.  In response to each of these, the

defendants refused to investigate these as required by law but instead continued to report these debts even when the creditor, Wells Fargo, as successor to Wachovia, refused to provide any details supporting the reported debt.

24) The Plaintiff also found out the settled SBA loan debt was listed on his credit and made the same demands as set out in the June 26, 2012 letter which was sent along with proof of settlement on 11/21/13 and demand it be corrected.

25) In response to each of these letters, the defendants refused to investigate these as required by law but instead continued to report these debts.

26) The defendants only reacted and corrected the credit of the Plaintiff when complaints were filed with the government (The "CFPB complaints below) almost two years after the first demand for reinvestigation.  The debt to Wells Fargo was based on a dispute over a transfer. At all material times this settlement was presumed valid under the law.  This court is spared additional analysis in this case.  The only court which will have jurisdiction over Wells Fargo and the Plaintiff regarding this debt issued a final order setting out that the transfer settling the claim was presumed valid.  Since the transfer states it was consideration for the settlement of the Claim of Wells Fargo, and since it is presumed valid, the debt is subject to the presumption which is no longer reviewable, the parties having otherwise settled and directed the defendants cease reporting the debt.

27) In their investigations it appears that the defendants failed to follow the procedures of the CFPB and FDCA, including, inter alia: failure to provide notices as required, failure to take reasonable steps to keep information determined inaccurate or unverifiable out of report, failure to keep information out of subsequent reports once it was determined to be inaccurate and removed all in violation of the FDCA.

28) The SBA debt was still being reported by at least one of the defendants, Equifax, as due in November of 2014 after the CFPB complaints (filed on or about April 2, 2014) and after at least some of the defendants, including Equifax had involved counsel.  A grid setting out the correspondence between June 26, 2012 and May 5, 2014 follows.

| 6/26/2012 | Experian, TransUnion, Equifax | -Notice of Forfeiture to Land Owners -Letter to Nationwide Trustee Services, Inc. | 49) 6-26-2012 letter to credit agencies.pdf |
|---|---|---|---|
| 8/2/2012 | Experian, TransUnion, Equifax | | 50) 8-2-2012 credit reporting letter2.pdf |
| 8/2/2012 | Experian, TransUnion, Equifax | -Summary of Rights -TransUnion Credit Report 7/11/2012 -Experian Credit Report 7/11/2012 -Equifax Credit Report 7/11/2012 | 66) 11-2-2012 lettertocreditagencies.pdf |
| 8/16/2012 | Experian | | 53) 8-16-2012 Follow Up Letter to Experian.pdf |
| 10/4/2012 | Experian, TransUnion, Equifax | -9/4/2012 Letter from Wells Fargo -9/21/2012 Letter from Wells Fargo | 58) 10-4-2012 Letter to Credit Agencies.pdf |
| 10/22/2013 | Experian, TransUnion, Equifax | -Excerpts from Facts and Law | ltrcreditreporting102213.pdf |
| 11/21/2013 | Experian, TransUnion, Equifax | | ltrcreditreporting112113.pdf |
| 11/21/2013 | Experian, TransUnion, Equifax | -Letter from U.S. Small Business Administration | ltrcreditreporting112113a.pdf |
| 12/3/2013 | Experian, TransUnion, Equifax | | ltrcreditreporting12313.pdf |
| 12/11/2013 | Experian, TransUnion, Equifax | | Creditreportingletter8.docx |
| 12/16/2013 | N. McRae | | Creditreportingletter10.docx |
| 12/16/2013 | Experian | | Creditreportingletter9.docx |
| 1/27/2014 | Experian, TransUnion, Equifax | -CR Letter 9 : Letter to Experian -CR Letter 8 : Letter to Experian | ltrcreditreporting119and8.pdf |
| 5/5/2014 | Experian, TransUnion, Equifax | | creditreportingletter13attachedto5514beyemail.pdf |

29)  Each letter called for a reinvestigation and correction of the misreporting.

30) While the responses show a failure to investigate, at least one of the defendants, Experian, on October 16, 2012, actually reported that the creditor Wells Fargo refused to verify the Wells Fargo debt and despite their inability to get it verified, Experian continued to report it. Experian's explanation of the continued reporting is an "admitted" violation of 1681(i)(a)(1),(5).  Unless something different happened when the other credit reporting agencies contacted Wells Fargo it would be appropriate to find that all three violated this provision.

31) On or about August 7, 2014 your petitioner had counsel submit complaints essentially in the form of this complaint to the credit agencies in a last ditch effort to attempt a resolution out of court.

32) On or about August 22, 2014 Transunion's attorney responded requesting information already in their possession.

33) On or about August 25, 2014 Experian responded stating that they were unable to confirm the debt to Wells Fargo and therefore left it on the credit report until Wells Fargo told them to remove it.  The failure to remove an unverifiable debt is exactly the opposite of what the FCRA requires.  1681(i)(a)(1),(5).  This admission was consistent with their earlier responses.

34) On or about September 16, 2014 counsel for Equifax responded.

35)  On or about November 11, 2014 your petitioner confirmed that at least Equifax continued to misreport the credit report of the petitioner.

36) On or about November 11, 2014 your petitioner requested Equifax's counsel reinvestigate and explain this.  No response was received.

37) On or about November 11, 2014 a copy of the correspondence to Equifax's counsel was sent directly to the reporting agencies and a copy was sent to counsel for Transunion.

38) Equifax originally corrected the plaintiff's credit report in response to the CFPB complaint; and then, in violation of 1681(i)(a) (1), (5) (B), (C) reinserted that information and maintained this for over 90 days (so far) even after getting counsel involved.

39) The shoddiness of the investigation is shown in misspelling the Plaintiff's name in reports as well as the other inaccuracies.

40) Results of the CFPB complaints:

   a) These complaints were filed on or about April 2, 2014

   b) The results of these complaints is instructive.  First, all of the defendants initially corrected the reporting by removing the items improperly listed from the Plaintiff's credit report.  Unfortunately, at least one of the defendants began reporting them again.

   c) In what is alleged to be a violation of the law, the court opinion and the settlement agreement on April 30, 2014 Equifax said that the information was reported as "correct as reported on the credit file."  However, by May 14, 2014 they say the "disputed accounts Wells Fargo…are currently not reporting on the Equifax Credit file."  Nothing was done to fix the damage done to the Plaintiff financially or to his reputation.

   d) Transunion replied on May 1, 2014 with a partial response and then followed up on May 19, 2014 giving a vague report on the investigation but at least stating that the report "has been deleted from your Transunion credit report." Nothing was done to fix the damage done to the Plaintiff financially or to his reputation.

   e) Experian was the last to reply on June 12, 2014.  Despite the fact that this was not sent

until June 12, they state that the report was accurate as of April 30,2014.  By this point in time the other two reporting agencies, co-conspirators with Experian and the banks who are un-named co-conspirators, had removed the incorrect items.  Experian still refused to accurately report Plaintiff's credit and apparently lied to the government about the results of their investigation which is shown by the fact that the debt was no longer reporting but they still said the information was accurate. Nothing was done to fix the damage done to the Plaintiff financially or to his reputation.

41) Plaintiff, from 2010 until the present, almost 5 years, spent much of his time attempting to resolve the credit dispute and primarily with the credit bureaus beginning in 2012.

42) Beginning in 2010 and within 24 months of the filing of this complaint Plaintiff made repeated efforts to get credit and credit actually was reduced in some cases for credit cards. Refusals were given, inter alia, from Sears, from Regions Bank, from Alatelco, from Bank of America, and from Iberia bank, each refusal resulting from the misreported items.  PNC refused to extend credit.  The embarrassment of appearing before creditors and being refused and the damage done to the Plaintiff's credit and reputation can be valued based on the Plaintiff's historical use of his credit to support himself through his real estate investments, his business investments, his law practice and his use of his time personally to earn a living.

43) In addition to the financial losses and in part as a result of those, the Plaintiff experienced sleepless nights, attended children's events but couldn't focus on them, was unable to write and lost the opportunity to write and had to put off writing and had to forgo other work both from the mental distraction and the need to work on this project.

44) A review of the case law indicates that the failure to award significant punitive damages in cases of this type may contribute to a feeling of immunity which can only be addressed if, in

an appropriate case, punitive damages sufficient to stop this type of repeated conduct is awarded.

45) Plaintiff a lawyer and real estate developer was unable to continue investing in real estate, was unable to keep real estate repaired and rented and was unable to devote time to fee generating work due to the necessity of dealing with this matter and the distraction it otherwise provided and the burdens it placed on his finances due to his inability to get loans. The time spent dealing with the incorrectly reported debts came from time Plaintiff would otherwise have used for his practice. This involves substantial hours over several years, two of which predate the filing of this complaint, which would otherwise have been available to plaintiff's law practice and which otherwise could have been used for lucrative work. While the total number of hours is not given here, the lost time represents lost income comparable to the other losses the Plaintiff suffered economically. The value of the time can be computed using either the Plaintiff's hourly rate or the much larger number reflected by the value of the work the Plaintiff has. Plaintiff was also a consumer who owned property in his own name and who had claims and opportunities personally, some being choses in action in his name, and personal rights of the plaintiff were liquidated at discounts to raise necessary capital or could not be pursed because of a lack of capital, thereby being reduced in value or lost as a result of the inability to obtain loans resulting from the actions of the defendants alleged herein. As an owner of real estate, the value of the credit that was damaged was a personal loss higher than it might have been to another, but was nevertheless personal in nature.

46) Based on his inability to fix his credit, FRIEDLANDER had no choice financially but to settle a Chinese Drywall case (a consumer chose in action) for much less than it was worth in

December 2012 in order to obtain cash to live on and deal with legitimate claims, and also

was unable to fund his law practice losing work and requiring that work which did not have

to leave the office to be referred out and being unable to take more work.

47)  FRIEDLANDER is also losing money monthly because he cannot maintain or increase his

real estate investments, finish repairs on his real estate to allow it to be rented and may have

to sell property for thousands less than it would be worth if repaired or if he could otherwise

obtain credit.

48) Plaintiff experienced tremendous embarrassment, stress and anxiety as a result of being

denied loans, being unable to continue his work as a developer and refinancing because of

the false reporting, but has determined to set the record straight.

49) Experian, Equifax and Transunion credit report continued to paint this false and damaging

picture of Plaintiff at least through June of 2014 and nothing has been done to correct these

misleading statements. The credit reporting agencies now have a variety of ways of reporting

this but as of November 2014, at least one defendant, believed to be Experian, appears

without any evidentiary foundation even in their own records, to report at least the SBA debt

as due and in default by the Plaintiff.

50) The entire experience has imposed upon Plaintiff significant distrust, frustration, damage to

his local banking relationships.   Plaintiff cannot now fully regain his good name and the

credit rating that he deserves and has worked hard to earn.

51) As of November 11, 2014, even though the defendants had counsel in place, Plaintiff remains

unable to obtain refinancing because of the inaccurate credit data being reported.  Reports

sent to the plaintiff have veiled threats such as "other items disputed are not currently

displaying…" without identifying what is referred to or why these "other items" are not referred to as "mistakenly listed" instead of "disputed."

52) Absent litigation, Plaintiff believes he will forever be harmed by the lack of procedures the defendants have in place to assure the maximum possible accuracy of Plaintiff's credit report and by their knowing, intentional and willful continued reporting of a settled debt.

**ADDITIONAL ALLEGATIONS COMMON TO ALL COUNTS**

53) Plaintiff hereby incorporates by reference all allegations contained in the preceding paragraphs as if fully rewritten herein.  In each count herein and below the un-named co-conspirator Wells Fargo may be responsible for contributing to the actions of the named defendants.

54) Section 1681n of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. See 15 U.S.C. § 1681n(a).

55)  Section 1681o of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

56)  The FCRA mandates that "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

57) On numerous occasions within 2 years of the filing of this complaint, the defendants have prepared consumer reports concerning Plaintiff.

58) Even when it was determined that their reports were inaccurate the defendants either failed to correct them or corrected them temporarily but subsequently continued to report the debt inaccurately at least until November 11, 2014.

59) The defendants within 2 years of the filing of this complaint have failed to correct some of the inaccurate reporting and failed to notify those receiving inaccurate reports that the reports were inaccurate.

60) The defendants violated the FCRA, 15 USC $1681s-2(b)(I)(B) by failing to review all relevant information provided by the consumer.

61) At least one of the defendants, Equifax, failed to keep the false reporting off of the credit report of the plaintiff after originally removing it in violation of 1681(i)(a)(1) and 1681(i)(a)(1) subsections (B) and (C).

62) Despite actual and implied knowledge that Plaintiff did not owe the debts in question, the defendants readily sold false reports to one or more third party, thereby misrepresenting Plaintiff, humiliating the Plaintiff, even as late as on or about November 11, 2014, and ultimately, damaging the Plaintiff's creditworthiness and reputation.

63) On each such instance, the defendants willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

64) Even when corrections were made, the defendants failed to notify those who had received inaccurate reports and failed to provide the information requested by the Plaintiff as required by the FCRA.

65) Through Plaintiff's communications with the defendants, they know, or have sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is inaccurate and damaging to Plaintiff. Nevertheless, the defendants have taken no measures to stop painting a false and damaging picture about Plaintiff or did so too late to prevent terrific damages to the Plaintiff.

66) Plaintiff remains unable to obtain mortgage refinancing or other loans because of the grossly inaccurate credit file maintained by the defendants.

67) As a direct and proximate result of defendant's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA and the other violations enumerated herein, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681(o).

68) Upon information and belief, defendants have been sued on multiple occasions over the past ten (10) years for falsely reporting that an individual owed a paid off debt despite being on notice that such was false.

69) Upon information and belief, defendants have exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

70) Upon information and belief, Plaintiff was the target of misleading debt collection communications which constituted a cognizable injury; 2) plaintiff has a statutory cause of action under the FDCPA; and 3) credit reports sent by defendants misidentified plaintiff's debts and creditors and were materially wrong and/or misleading, and thus, plaintiff is entitled to a judgment under the FDCPA.  To the extent applicable, as alleged herein, there is also a remedy under 1681 and to the extent that the defendants are subject to claims as debt collectors under the facts herein under section 1692(e) of the FDCPA. 15 USC 1692 deals

15

with the use of abusive, deceptive, and unfair debt collection practices by debt collectors and

under the circumstances of this complaint it is alleged that the defendants functioned as Debt

Collectors as defined by that act.

71)  Defendant's pattern of refusal to follow reasonable procedures as mandated by the

FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by

Plaintiff are attended by circumstances of fraud, malice, and willful and wanton

misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and

costs pursuant to 15 U.S.C.§ 1681n(a)(2).

72)   The term "consumer" as used in this Complaint means any natural person obligated or

allegedly obligated to pay any debt, as "debt" is defined in Section 803(5) of the FDCPA,

15 U.S.C. § 1692a(5).  The defendants allowed themselves to become a part of the debt

collection process by cooperating with debt collectors to use false representation of the

character, amount or legal status of the Wells Fargo debt in violation of 1692(e).

73)  Either Experian, Equifax and Transunion conducted no investigation of disputes, or such

"investigations" were so shoddy as to allow objectively false and highly damaging

information to remain in plaintiff's credit file or they were done in a conspiratorial fashion

designed to conspire with the named and unnamed co-conspirators to allow a concerted,

unsupported attack on the Plaintiff.

74) By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard,

Experian, Equifax and Transunion willfully and/or negligently violated 15 U.S.C. §

1681i(a)(1) with respect to each dispute lodged by Plaintiff.

75) As a direct and proximate result of Experian, Equifax and Transunion's willful and/or

negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined

above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due

to denial of mortgage refinancing, loss of opportunity to obtain credit, damage to reputation,

expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration

and embarrassment, entitling his to an award of actual damages in amounts to be proved at

trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

76) Experian, Equifax and Transunion's pattern of refusal to correct patently false information as

mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries

suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and

wanton misconduct, calling for statutory damages, an assessment of punitive damages

against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

77) Under the facts stated hereinabove and which Plaintiff feels can be proven in court malice,

willful intent to injure and a conspiracy to carry out those can be implied or proven outright.

## COUNT ONE
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681 *e* (b) [failing to establish or follow reasonable procedures to assure maximum possible accuracy]

1. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.
2. Within two years prior to the filing of this suit, by example only and without limitation the defendants violated 15 U.S.C. § 1681 e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files they published and maintained concerning the Plaintiff.
3. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.
4. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant

to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

5. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.


## COUNT 2
**15 U.S.C. § 1681 _i_ (a)(1) [failure to conduct a reasonable investigation and record the current status or delete the item],**

6. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

7. Within two years prior to the filing of this suit, by example only and without limitation the defendants violated 15 U.S.C §1681i(a)(I) by their conduct which includes but is not limited to failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently delete the information from the file.

8. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

9. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

10. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and her attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.


## COUNT 3
**1681(i)(a) (1), (5) (B), (C) [failing to maintain procedures designed to prevent the reappearance of deleted inaccurate information or information that could not be verified];**

11. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

12. Within two years prior to the filing of this suit, the Defendants violated 15 U.S.C § 1681i(a)(1),(5) by its conduct which includes, but is not limited to, after determining that the debts could not be verified or was inaccurate, the defendants failed to take steps to keep them out of the credit report of the Plaintiff. This is true even after they were initially removed.

13. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically,

financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

14. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

15. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

## COUNT 4
**1681(i)(a)(1),(5); 1681(i)(a)(2) [failing to provide creditors notification of the plaintiffs dispute and failing to include all relevant information regarding plaintiffs dispute];**

16. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

17. Within two years prior to the filing of this suit, by example only and without limitation the Defendants violated 15 U.S.C § 1681i(a),(1),(2),(5) by its conduct which includes, but is not limited to, failing to send all relevant information that they received in Plaintiffs dispute letter to Wells Fargo and/or the SBA.

18. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

19. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

20. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

## COUNT 5
**15 USC 1681(i)(a)(4) [failure to review and consider all relevant information submitted by Plaintiff];**

21. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

22. Within two years prior to the filing of this suit, by example only and without limitation the Defendants violated 15 U.S.C § 1681i(a)(2) by its conduct which includes, but is not limited to, failing to consider all relevant information submitted by the Plaintiff or received otherwise in Plaintiff's dispute.

23. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

24. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

25. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

**COUNT 6**

**15 USC $1681(i)(a)(5)(A) failing to promptly delete disputed inaccurate items or modify items upon an accurate reinvestigation**

26. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

27. Within two years prior to the filing of this suit, by example only and without limitation the Defendants violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to delete any information which was the subject of Plaintiffs disputes and which was inaccurate or could not be verified.

28. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

29. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

30. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

**COUNT 7**
**15 USC 1681(i)(c)**

31. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

32. 1681(i)(c) in pertinent part holds:
Notification of consumer dispute in subsequent consumer reports
Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.
(d) Notification of deletion of disputed information
Following any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any notation as to disputed information, the consumer reporting agency shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) of this section to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information.

33. Within two years prior to the filing of this suit, by example only and without limitation the Defendants violated 15 U.S.C § 1681 (b), (c) and (d) by its conduct which includes, but is not limited to, failing to delete any information which was the subject of Plaintiffs disputes and which was inaccurate or could not be verified and failing to notify recipients of the credit report that it contained inaccuracies.

34. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

35. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

36. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

**COUNT 8**
**15 U.S.C. § 1681 *s* -2(b)(1) [(A) failure to fully and properly investigate; (B) failure to review all relevant information; (C) failing to include notation of dispute and failing to correctly report results of an accurate investigation to each other credit reporting agencies];**

37. Plaintiff realleges and reincorporates the paragraphs above as if fully set out herein.

38. Within two years prior to the filing of this suit, by example only and without limitation the Defendants violated 15 U.S.C § 1681i and 1681s by its conduct which includes, but is not limited to, failing to fully and properly investigate the debts which were submitted for reinvestigation, failure to review all relevant information submitted or obtained relative to the debts which were submitted for reinvestigation and failing to include notations of the dispute in credit reports and failing to report the results of an accurate investigation to each other credit reporting agency.

39. An obligation is placed on the furnisher of information.  15 USC $1681s-2(B) provides:

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

40. There is no option not included and therefore the response of Wells Fargo, refusing to provide information amounted to the debt being unverified.  By failing to correct the report when the information was unverified, the defendants effectively stepped into the role of a provider of information since there was no one else to verify the information.  The continued reporting of the debt thereafter and the failure to address the debt thereafter was a violation of 15 USC$1681.

41. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

42. The conduct, actions, and inaction of the defendants were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

43. The Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681.

## COUNT 9: Common Law Claims if Available

44. Plaintiff is a member of a class where the defendants accepted the findings or bare allegations or unverified allegations of a credit reporting agency, against the legally supported allegations of a debtor when contested.

45. The defendants' the actions were in restraint of trade.

46. Section 5(a) of the FTC Act,15 U.S.C. § 45(a), prohibits unfair or deceptive acts or practices in or affecting commerce; the FCRA, 15 U.S.C. §§ 1681-1681x, which imposes duties upon consumer reporting agencies and those who furnish information to a consumer reporting agency or use information obtained from a consumer reporting agency; and the FDCPA, 15 U.S.C. §§ I 692-1692p, which imposes duties upon debt collectors as well as 15 U.S.C. § 1692a(6). the defendants and the unnamed co-conspirators are persons or entity subject to Section 623 of the FCRA, 15 U .S.C. § 1681 s-2, which imposes a series of duties and prohibitions upon any person or entity that furnishes information to a consumer reporting agency.

47. In this case in particular, the actions of the defendants aided creditors in pursuing invalid debts.  Under the facts, malice or willful intent to injure so as to make these debts more collectible and more difficult to defendant can be proven or implied.  These common law claims of intent to harm, defamation, invasion of privacy and conspiracy are excluded by statute if based on a credit report unless

(a) the information in the report is false and (b) the information is furnished with malice or willful intent to injure the consumer. Under the facts of this case, willful intent and willfulness are more likely than any amount of negligence.

48. At all times material to this Complaint, the named and unnamed conspirators have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44. In addition the individual credit reporting agencies have worked a course of trade in that they sell to creditors consumer's information.

49. Plaintiff has a statutory right not to be the target of misleading debt collection communications and the claims he owed a debt which he did not constituted a cognizable injury and this is a statutory cause of action under the FDCPA; and 3) letters and reports sent by defendants were materially misleading, and thus, plaintiff is entitled to judgment under section 1692(e) of the FDCPA.

50. Section 809(b) of the PDCP A requires that debt collectors who receive such a written dispute cease collecting the debt "until the debt collector obtains verification of the debt" and mails the Verification to the consumer. Defendants used the incorrect credit reports even after having information where they knew or should have known it was inaccurate to attempt to assist the conspirators in collecting the amounts due or to injure the Plaintiff to get to the same result.

51. In numerous instances, consumers have notified consumer reporting agencies that related account information appearing on their credit reports is wrong. The consumer reporting agencies forward most such disputes in an electronic format, through automated consumer dispute verification ("ACDV") forms.

52. Pursuant to Section 623(b)(I) of the FCRA, as a furnisher of information to consumer reporting agencies, is required to conduct a reasonable investigation of the disputed account information upon receipt of an ACDV from a consumer reporting agency.

53. The blind acceptance of reported debts, the batching process of and form response of the consumer's dispute and continued reporting of the claims known to be false or unverified both before and even after counsel was involved is not a reasonable investigation. The procedures as shown in this case, do not investigate the particular merits of the consumer's claim by, for example, reviewing individual account documents, contacting the original portfolio seller to verify the accuracy of the information, asking the consumer reporting agency for more information, or reviewing its own internal notes or demanding that the reporting creditor has verified the information or responded to reasonable evidence of the invalidity of the debt or that they have failed to acknowledge that the information is reasonably disputed or even that there are presumptions under the law that the reporting is invalid.

54. As a result of the conduct, actions, and inaction of the defendants, the Plaintiff suffered various types of damage as set forth herein, including specifically, financial losses, the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, tracking the status of his disputes and monitoring his credit file, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

55. The conduct, actions, and inaction of the defendants were intentional and/or willful, rendering the defendants liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, they were negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o and under other applicable federal and state statutory and common law.
56. The Plaintiff is entitled to recover injunctive relief, actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendants in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), *1692/,* 1681s, and the Court's own equitable powers, respectfully requests that the Court:

1.  Enter a permanent injunction to prevent future violations of the FTC Act, the FCRA, and the FDCPA by Defendants or, if unavailable, to fashion a compensatory and punitive award that takes into account the actions of the defendants in the past and their willingness to continue them in the future and the apparent vengeful and coercive nature of the acts complained of;

2.  Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the FTC Act, the FCRA, and the FDCPA, including but not limited to, damages for financial losses, damages to provide restitution for lost credit, reputation, embarrassment and economic loss due to denial of loans and mortgage refinancing, loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681(o);

3.  Statutory damages as provided for by 15 U.S.C. § 1681$n$(2); actual damages in an amount to be proved at trial; and/or Award Plaintiff monetary civil penalties for each violation of the FCRA as alleged in this Complaint;

4.  Punitive damages as provided for by 15 U.S.C. § 1681$n$(2);

5. Costs and attorneys' fees as provided for by 15 U.S.C. § 1681$n$(3) and 15 U.S.C. § 1681$o$(2); and such other and further relief as this Court deems just and proper.

Dated this first day of December, 2014.

Respectfully submitted,

*/s/ Gregory Friedlander*
Gregory Friedlander
Gregory M. Friedlander & Associates, P.C.
11 S. Florida St.
Mobile, Al 36606
251-470-0303
Fax (888) 441-2123
Email:gmfpc1@gmail.com

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues available for such trial in this lawsuit.

Dated this first day of December, 2014.

*/s/ Gregory Friedlander*

The Defendants can be served through their agents at the following addresses:

Experian Information Solutions, Inc.
c/o CT Corporation System
2 N. Jackson St. Suite 605
Montgomery, Al 36104

Equifax Information Services, Inc.
c/o CSC Lawyers Incorporating Svc. Inc
150 S. Perry St.
Montgomery, Al 36104

Trans union LLC
c/o Prentice-Hall Corporation System, Inc.
150 Perry St
Montgomery, Al 36104